Good morning. Welcome to Fifth Circuit. I'm Judge Dennis, and together with Judge Hickinson and Judge Willett, we'll be your panel this morning. And I'll call the first case, which is United States of America v. David Ray Johnson. And we'll hear first from Christopher Averly. Good morning, Your Honors. Chris Averly, court-appointed counsel for David Ray Johnson, who makes three challenges to his conviction today. Well, one to his sentence. The first challenge involves a rather straightforward argument, though there is no law, case law, governing the question. Specifically, we argue that although Mr. Johnson openly carried a gun into the Barksdale Federal Credit Union, nobody saw him do it. No witness testified, rather, that he did so. And our argument is that he, therefore, cannot be found guilty of brandishing that firearm as alleged in Count 6. Despite the lack of case law on this point, we believe that the result is dictated by the plain meaning of the language used in 924C for defining brandishing as displaying or otherwise making known the presence of a firearm to another person. But the last little bit of that statutory language, you know it as well as I do, regardless of whether the firearm is directly visible to that person. Correct. Correct. What kind of weight should we give that final clause of the definition? Well, we can give it all the weight that you want because the problem is it was never made known to the witnesses. In other words, sure, he doesn't have to show it to them. Our argument is the government is relying on the fact that the word display means you just show it. You don't show it. No one sees it. You're still displaying it. We're saying that displaying like any other thing requires the defendant to make the presence known, whether the victims can see it or don't see it. Mr. Johnson didn't make the presence of the gun known because nobody paid attention to him. The one victim didn't even notice he was in there. The other one saw him peeping over the hedges is all she saw. The government seems to say the focus should be not on what the victim saw, but what on what the defendant did. Right. But what the defendant has to do, according to the statute, is display or otherwise make it known. He failed to do that. And it's not just known to anybody. It's known to the person to whom he intended to intimidate. So, in other words, it's like an assault offense. And to commit an assault, you have to, you know, you put somebody in fear. He didn't. He failed. He attempted to do so, but he failed. And our argument, therefore, is that he couldn't be charged with brandishing. The error would require him being resentenced to the to the lesser carrying offense. You didn't make an instructional argument, did you? So you're this is a pure sufficiency issue. Yes. And you argued the point you made to the jury. No. Well, no, we're relying we're relying on the general rule. Twenty nine motion for judgment acquittal. That was not specific, which was not a specific argument. So so as I think, you know, obviously, you have to we have to think hard about the regardless language Judge Willett mentioned. And both sides, I think, agree there isn't circuit law pointing to actual knowledge of the victim as if as opposed to the offender specific approach that the offender displayed it with the intent to intimidate. Right. But you would contemplate that, therefore, the government would always have to elicit a victim witness that would say, I saw it or I saw it and I felt intimidated. I saw it or I knew he had a gun or I could see the bulge in his pocket or he said, I have a gun and I'm going to shoot you if you don't give me the money. You could never get this two year mandatory enhancement if, say, the victim were blind. They just were incapable of seeing it. You would never be able to get a brandishing. No, we would. We don't say that if the victim were blind and the perpetrator come in and said, give me the money, I got a gun. Well, he has made the presence of the gun. No. Well, I thought it was display to intimidate. Anyway, it is sort of a fun issue. What about the government sort of I'm perhaps I think they submitted a video photo from the proof. Let's say Miss Carter, as the teller said, I wasn't intimidated. It's not infrequent that a teller would just not want it sort of directly involved himself. But if the jury actually saw Miss Carter raising her hands, why couldn't the jury infer that she felt intimidated even despite her testimony? Could you hear me? Are you there? Oh, you might have frozen up. Not an important question. Oh, poor. OK. Oh, we lost you, Chris. There you are. Well, I'm back. I thought my question was so hard that you just froze up. But probably I thought my question made you freeze up. But the question, what was it? Oh, don't worry about it. Go ahead to the rehab knowledge, because that is more recent law. And we usually see rehab coming up in attacks on guilty pleas, you know, and they're subject to plain error. But here you did object to rehab. But but you got a pattern instruction that follows the law. Correct. And so we're again, you're asking us to overturn the jury verdict, even though it had before that, that he'd been revoked and served 17 months. That's that's an uphill battle. Well, here's our argument on that. The government, the jury was told that he committed a felony. And unfortunately, my screen has moved away from my camera, so I'll try to look at the camera. The jury was told that he committed a felony in North Carolina and that based on three of those felonies being consolidated, he got a sentence of six to 17 months. Our argument was that that doesn't establish that he was actually convicted of a crime punishable by more than one year because you don't know how that breaks down for any given account. But regardless, even if even if it is, even if it qualifies as a felony, there's not evidence that he knew that because and the government cites Barlow, which is a Fourth Circuit case, which they stand stands for the proposition that all felonies in North Carolina are punishable by a term exceeding one year that just reading that case makes it clear just how difficult it is to understand North Carolina sentencing law. But one thing one thing that court does make clear is that a defendant is entitled to be released from prison nine months before the maximum sentence of the maximum stated sentencing range. In this case, if 17 months is the maximum sentence for any one offense, then he was entitled to be released after eight months. Now, because the remaining nine months of the sentence is a supervised release. And of course, he could go back to prison if he violated that release. The Fourth Circuit judge panel in that case held that well, that makes it a crime punishable by more than one year. But you certainly see the argument be going the other way. In any case, it like the defendant in Barlow, you can certainly see that this defendant Johnson would would not understand that he was convicted of a crime punishable by more than one year if he knew that by law, they had to let him out in eight months. So simply saying that he has been convicted of a felony and therefore under North Carolina law, he can't possess a gun is not sufficient to prove that knowledge, particularly since North Carolina does not define a felony in terms of the length of the sentence. It's a felony is defined in several ways. One way is that it's a crime punishable by a prison term in the state prison. The other is a felony is anything designated by the legislature as a felony. So we think that based on simply that fact that he was not told he can't possess a firearm because he could have committed a felony in North Carolina is not sufficient to prove the knowledge required by given. There's 20 seconds left, and my last issue is a plain air one. Um, leave it to the brief. Yes. Thank you. Thank you, sir. So where you're next from Elizabeth Darden. Please support your honor. My name is Elizabeth Daugherty for Lake Andrea goings. My first argument judges. Interesting. Also entertaining. Interesting. And I rely on a panel decision. Estrada Fernandez 1 50 5th 3rd 4 91 like Valenzuela, the defendant there. Um, the government made a strategic choice from the entirety of the case in the lower court to with respect to count five to charge goings in the conjunctive with the violation of 18 to 113 A and D. Count five was written in the indictment in the conjunctive. The jury instructions also read to the jury written in the con junctive and the jury verdict form. All of these areas were strategic decision by the government to continue with the con junctive. The jury verdict form was simply armed robbery of the credit union count five. There's insufficient evidence to prove Ah, to 113 D. Um, we're gonna adopt Mr Johnson's argument with regard to brandishing and the evidence that he brought to the court's attention from the eyewitness of not even seeing Mr Johnson part D of 2113 requires the defendant to assault and put into jeopardy the life of another person by the use of a dangerous weapon, i.e. a gun. The government failed to prove this. Mr Johnson was not even seen inside the bank. He could have just as well had the gun sitting in the escape car waving it back and forth. That's not the intent of 2113 D. The government failed to prove D. And accordingly, there can be no aiding and abetting of an act that did not occur. As we all know, with a conjunctive. If one element of a conjunctive is false, the entire statement is false. The court should remain for entry of judgment of acquittal on count five and six, which hinges on necessarily hinges on a goings conviction of count five. My second argument with respect to its response to the jury question. The court abused its discretion and committed reversible error by tacitly saying that the voice of the robber was goings on the EPS bank audio. And his abuse of discretion, in your view, the correct doing the court answer. I'm sorry. Sorry to barge in on that on that issue. The jury request issue is Yes, the discretion, the correct standard of review for Absolutely abusive discretion abuse of discretion and Here's what the jury question was the jury question was, we'd like to see the EPS ATM audio of goings voice during the robbery. Over the objection of counsel, the court responded to the jury. We are going to play for you the information you requested, i.e. the audio of goings voice during the robbery. Now, the jury requested three audios to known to be goings voice and then Yes, I'm sorry to interrupt, but Judge will it did ask a question. I'm interested in to did. Was there an objection. Would we were doing for abuse. There was an objection. I'm sorry, there was an objection. There is an objection. In the record given Yes, that said, there was a long discussion about it in the record and If so, I thought our case law was distinct as to responses to jurors juror inquiry and that you would have to show that the response was overwhelmingly misleading. No. Yes. And I do believe that it is overwhelmingly misleading. Because by placing Court of said, what should the district court because Because the district court easily could have taken care of this by saying, without making a comment, one way or the other on whose voice. This is in the EPS video. There is no evidence. Your Honor didn't actually make a comment. It just, it just gave the item. And the jury was the one that included the the sort of directional fact in its inquiry. Right. The district court never said, yes, this is going as voice. No, the, the district court said exactly. We are going to play for you the information you requested and the request was The EPS ATM audio of going voice. Now it could have been really simple for the court to say without making a comment on whose voice was on the EPS audio We will play for you the information you requested that clarifies everything totally simply and otherwise the judge, the court has made a comment on the ultimate finding a fact for counts two and three. There was no evidence direct evidence placing goings inside the bank for the EPS robbery. Yes, sir. No, no, I just, I, my questions took up your time. But I think you have rebuttal time left. Yes, my time is gone. You can have It's up to Judge Dennis You can have three more minutes.  Um, so in doing so, in doing so, the court actually answered the ultimate question of fact that belongs to the jury and that is going placing goings inside the bank and ergo guilty on counts both counts two and three. Um, as I said, the jury was simply comparing the EPS recording with two other known recordings of goings voice with this EPS recording where it was not identified specifically to be goings. The error is not harmless. In the blue brief on page 21 through 23 five or six bullets that list some substantial evidence that supports the fact that goings was not in the bank on the morning of the robbery. A reasonable juror could conclude that the court's comments meant that the robber at EPS was goings ergo guilty on counts two and three. The error is not harmless. The court should issue Should reverse and remand and issue judgment of acquittal on counts five and six and then reverse and remand for a new trial on the remaining counts. Thank you so much. Thank you, your honor. May it please the court counsel here and I will begin with the issue that Mr already concluded with and I would like to clarify. There was an objection to 1 of the pieces of evidence being played back, but it wasn't the apps ATM audio. It was the video from Mr Johnson cell phone, which was ironically a defense exhibit. They objected to that going back. Based on the jury's conclusion that Miss goings voice was on the video because she had not been identified as being in the video and she is not seen on it. However, the government still argued it as an abuse of discretion and submits that the district court did not abuse the wide latitude that he has when deciding to respond to a jury's question. Short of making the explicit statement that missed already requested that he was making no finding one way or the other. I think that's basically what the judge did. He just said, I'm giving you what you asked for. The jury asked for 3 things. He brought them back into the courtroom. He said, I'm giving you these 3 things and they play the videos for the jury had he's done really much more than he would have been commenting on the evidence and he would have been interfering with the jury's determination. The jury had made a factual determination after having listened to these videos that they believed that Mrs goings voice was on these videos and and and that was not wrong. It was not any. It was not the court's place to comment on that determination by the jury or nor to interfere with it. And regardless, the error was harmless. Miss goings was arrested with Mr Johnson in her vehicle after a high speed chase following the Wentzboro state bank robbery. The money from the Wentzboro state robbery was in the bank. Money from the Marksdale Federal Credit Union was in the bank. I'm sorry. It was in the vehicle money from both of those 2 banks was in the vehicle and then a glove that Mr Johnson had worn was found abandoned at the scene of the incident. The the 1st robbery, the guarantee bank in Epps. So the evidence of her guilt and and his guilt was quite overwhelming now, turning to count 6, the brandishing issue and whether Mr Johnson could be enhanced for brandishing. I did ask the court. I'm sorry. The clerk to provide the court with government exhibit 12 dash 003, which is a screen grab from the. The security video from the bank, and this is Mr Johnson standing here with his obviously visible firearm. This is the teller right here. And Miss Carter just testified truthfully that when Miss goings ran into the bank. She fixated on her. She paid attention to her and she was complying with her demands as she screamed at her. Miss goings was not armed during this robbery, although she had been armed during the 1st and the 3rd. She just had tunnel vision and did not see Mr Johnson as he stood there with his firearm pointed at her. And I don't know what else Mr Johnson could have done to have displayed that weapon or to have made it visible to her short of actually pressing it against her to get her attention or say, hey, woman, pay attention to me. You know, he does your turn on. I guess, is there any district or circuit law clarifying that it is a an offender specific element. In other words, it's whether the offender displayed and whether the offender had the intent or is that just an odd little lacuna in the law right now. I think it is. There's no case directly on point your honor, but the 9th circuit in the case of vote one when they described his conduct. It was entirely from his perspective. They said that he walked into the bank carrying his rifle. He set it down on the tellers counter. He then moved it to a different tellers counter and he walked back and forth and they said that was sufficient to find that he had brandished the firearm. So it was entirely from his perspective, even though because he claimed he should not have been enhanced for brandishing and they and they did, but they didn't specifically discuss whose perspective. The element should be the statute. It isn't. It is a sort of compound sentence. It's different than just discharging. If we were to see ambiguity with the rule of lenity kick in at all here or not, I don't see any ambiguity, your honor, and I don't think that's necessary here because I think it's clear that because you're focusing on the defendant's intent, the intent to intimidate, I think that it has to be from his perspective that he displays the firearm with the intent to intimidate. I mean, if if the if if what the victim perceived is relevant, then I don't. Then how does the defendant's intent come into play? He would say, I walked in with this gun display, but I didn't intend to intimidate her, but she was intimidated. I doubt the defense would say that we could look at the victim, whether the victim was in fact intimidated or not. It's what he intended to do with the firearm. What's your primary argument that legally we should answer this as First Circuit to say so? It's offender specific, or would you say the jury had evidence to conclude that she actually did have actual knowledge? She testified that she did not have knowledge, your honor. I know, but OK, so you are not urging that the jury saw the video and could have concluded that she was intimidated by putting her hands up. No, your honor. She testified that that's not consistent with the record. She testified that she did not see the gun. The gun. She didn't even see the man, much less the gun. All right. So it will require the court to decide that it's the defendant's intent when he actually walked in with this firearm displayed. And I think it is in the conjunctive. You either display as the 4th Circuit said in gross brandishing occurs when the defendant either displays all or part of the firearm or he otherwise makes the presence of the firearm known. And he walked into the bank displaying all of the firearm except for the part. I guess it was covered by his hands. I wasn't technically displayed, but I was going to mention the court's hypothet about what if the person was blind? I mean, are blind people not protected by this enhancement? I mean, this is this enhancement. If we think about the purpose of the enhancement, it's a graduated scale based on the dangerousness of the defendant's conduct. If you possess or use a gun, dangerous. You get a five year enhancement. If you actually display the firearm, if you have it out and pointing it at people, you're increasing the level of danger. It is much more likely that someone is going to be harmed. Therefore, you are facing a seven year mandatory minimum. And if you actually discharge the weapon, even if it's into the air or into the ceiling of the bank, you are grossly increasing. I was going to ask. I mean, this just may be my ignorance. I should know this law better. But these these are penalty provisions, but they have to be proven to the jury beyond a reasonable doubt. Is that correct? Yes, sir. Okay. Yes, sir. All right. Moving on to Mrs. Goings issue about the arm bank robbery. She relies on Mr. Johnson's argument, but it's two different statutes and it's two different requirements with the display. The gun does have to be openly displayed or the person must otherwise be made aware of the presence of the gun. That is not required for that arm bank robbery conviction. All that is required is that he actually was armed during the course of the robbery and used intimidation towards the victims of the robbery. Miss Goins relied on the Bellow case in her brief, and that case is is very distinguishable. In that case, Mr. Bellows walked into the branch of the bank with a gun in his briefcase. He asked to see the bank's manager. He was told the manager was not available. He sat patiently waiting and then left the bank, came back, did the same thing again, sat patiently waiting, left a second time. And then when he returned, the police were there. And only at that point did he pull the gun out of the briefcase and hold it to his own his own person. So he never did. His conviction for armed bank robbery was overturned, but it was because he never used he never there was never an act of intimidation. He never tried to intimidate anybody in the bank. So it wasn't a bank robbery. It was a felony committed on bank property. It should have been 2113B, not 2113 or the second paragraph. Excuse me, 2113, not the first paragraph of 2113. There's not a lot of case law in point that I could find, but there is for the companion statute, which involves robbery of United States employees, which is 2114. They both use the. Put someone's life in jeopardy language, and in the. Ruiz case, the defendant was trying to rob a store on a military base. He did not display the gun, nor did he tell the employee he tried to overpower that he had a gun. And yet this court held that the defendant was guilty. Properly convicted under 21. With the enhancement for the use of the gun, because the presence of the gun emboldened him, there's also a 7th Circuit case where a postal worker's keys were stolen. Ruiz, the gun was not utilized until after. The keys had been stolen and the defendants were running away, and then the postal worker gave chase, so they displayed the firearm and the 7th Circuit upheld the 2114 conviction. Basically, if a gun is used during a bank robbery, the enhancement is appropriate, and that is a. The Parker case. Here in the 5th Circuit and that court case relies on Baker, which is an even older 5th Circuit case. I think from the early 70s. So. And the the remedy, if the court believes that Miss Goins is correct, is not to vacate her conviction in its entirety. 2113 D is the penalty enhancement. If that's not proven, then, as with the 924 C penalty enhancement, the jury did find all of necessarily define all of the facts for the conviction of the lesser included offense of bank robbery. And so the Senate should be vacated and the case remanded for Senate resentencing only as to that on that crime. And then. Yeah. As far as the issue. In North Carolina, all crimes deemed felonies are felony predicates under 922 G. Of course, we're not arguing that Mr Johnson would have known that, but he did know that he was convicted of a felony. There is a piece of paper, a document in evidence. I apologize that I do not have the specific citation to it, but it's it's either in G39 or G40. And it is a document that he signed related to his North Carolina conviction in which he acknowledged that as a convicted felon, he was not allowed to possess a firearm. I understand that North Carolina law regarding felon possession of guns may be different. I'm not citing it for the fact that he knew he couldn't possess a gun. I'm citing it for the fact that he knew he was a felon because he signed a piece of paper. Right. The Supreme Court's decision in the pattern instruction that's been updated and was given correctly since Rehave or however you pronounce it. It doesn't matter that he knows he's a felon. Right. The jury was told they have to find that he knew he was convicted previously of a crime punishable by more than a year. That's what the jury was told. And that's correct. So the North Carolina card that says you can't have a gun because you're a felon, that that's not necessarily proof. I would think that the his his being revoked and serving 17 months is a much stronger piece of evidence. Would you agree with that or not? I would agree that that's an additional piece of evidence. But OK, then I'll be more specific with a question. Would you agree that the North Carolina card actually doesn't inform the element the jury had to find? No, I do not agree with that, Your Honor, because I think the words felony and crime punishable by more than one year of imprisonment are used interchangeably in common language. And it was appropriately used interchangeably here. Well, the jury, you'd agree the jury was told that they had to find he knew he was convicted of a crime punishable by more than a year. That's what the jury was told. Correct. So how can you say that you can meet that element of proof by evidence that he knew he was classified as a felon? Because typically the common definition of felony is a crime punishable by more than one year. The attorneys argued in their closing arguments that the felony and crime punishable by more than one year, they use the terms interchangeably, just as this court has in case law cited. Although I apologize, I can't give you the site right now. Yeah, but you had a secondary piece of evidence or maybe a primary piece that went specifically to months in jail, didn't you? Correct, Your Honor. He was sentenced to six to 17 months in jail. He was given a suspended sentence and then his sentence was revoked and he served the reimposed six to 17 months. I do not know how many months he actually served, but he was told that he was served six to 17 months. Yeah, yeah. Okay, that's it for my questions. Okay. Well, since Mr. Aberle did not address his last issue, I'm not going to either. I will submit it on the brief. And if the court has no further questions, I cede back the balance of my time. I do want to say I like the great hall in your background. Where did you get that? Thank you, Your Honor. I don't know. This is the setup that our district court attorneys have been using for Zoom Court for the last six or seven months. I love that. I thought it was appropriate. We have pictures of the three courtrooms in our other conference room. Okay. Thank you, Ms. Griffey. Here again for Mr. Aberle. Trying to influence the court with that photo. On the brandishing, the government focuses on the intent requirement as though it vitiates the make known requirement. There is definitely an intent requirement. He has to intend to intimidate somebody. He has to tend to, you know, do it with the gun. But the statute also says he has to make known the presence of the firearm, and he failed to do that. So, well, yeah, it's crazy that he failed, but he did. So he attempted to brandish, but he wasn't charged with attempting, he was charged with brandishing. So we think that that's going to require it to be vacated. And I believe it was Elaine itself is the one that is the case that says that it is an element of defense that has to be proved to the jury because it raises the minimum sentence. Yeah, yeah. As for felon in possession and the rehafe, backing off of rehafe for a second, just the evidence that he had committed a crime of punishment by more than one year, we don't concede that as a matter of law. I don't think the government proved it to the jury because they simply presented a document that said your sentences six to 17 months on these three counts. But the Barlow case is, it took until 2015 for a court to sit down and decide this issue. And if you read Barlow, you could certainly see them coming out with a different conclusion, given how this built in post release supervision plays out in these lower offenses. He did have the lowest felony class that you could have. So we don't concede, in other words, that as a matter of law in North Carolina, all felonies in North Carolina are punishable by more than a year. And I would also add that if you look at the definition, as I think I said before, if you look at the definition of felony in North Carolina, it is not defined by a crime punishable by more than one year in prison. Thank you. Okay. Ms. Dougherty. Your Honor, I have two thoughts really listening to this with regard to my first argument. Had the government really wanted to charge Goings with bank robbery under, with simple bank robbery under 2113A, I have to believe the government had plenty of vehicles to do just that. And I, once again, cite the Estrada Fernandez case, including something as simple as jury interrogatories that were used there. Also, with regard to this Johnson issue about brandishing and whether or not he put somebody's life in danger, let's not lose sight of the fact that the only citing by an eyewitness to the Epps robbery of possible Johnson was the top of his head over a bush outside the bank. Nobody saw him in the bank. Nobody ever saw the gun in the bank. No matter how many hands went up, there's actual testimony that nobody saw him. The woman did not see him, nor did she see a gun. So the requirement in 2113D of assault and put into jeopardy the life of another person by the use of a dangerous weapon simply is not supported by the evidence. I listened to the argument that it is from his perspective, and I, you know, he could, from his perspective, if he sat behind the wheel of the car a half a mile from the bank and got angry and waved the gun around, there would be no difference from that argument of not being seen. So with that, I'll take any questions and thank you for your time. Thank you. Thank you. This case will be submitted and we'll call the next case for the day. Thank you. Thank you, counsel.